May it please the court, Joseph Whelan for the appellant, the FPE Foundation. I request two minutes for rebuttal. Yes. The district court placed all of the claims in this matter into arbitration based on an arbitration provision that is found in a 1989 trust document, which is referred to as the Maurice Trust. This included a counterclaim filed by the CS Foundation against my client that arises out of a 2010 settlement agreement. It's that portion of the decision on which my appeal is focused. Notwithstanding the complexity of this case, my appeal is quite simple. The settlement agreement provides that any disputes that arise out of it shall be heard in court. The counterclaim is a dispute that arises out of a settlement agreement. It should be heard in court, and the district court should have honored the party's intent and left it in court. But aren't there two potential disputes here? The first dispute is whether, what do we call it, the Q-tip dissipated the assets or misapplied the assets so that the distribution ultimately down to your client is adversely affected. The second potential dispute is a dispute about the division of the assets that ultimately are available to your client. The first issue, as I think you agree, certainly arises ultimately under the terms of the Maurice Trust. I mean, it's a matter of trust administration. But to the extent that you are appearing in this action and supporting the position that the Maurice Trust or Q-tip should have behaved differently, you are to that extent raising an issue or joining in the litigation of an issue about the administration of the Maurice Trust. That is correct. And that, I take it, should be a matter for arbitration on your own theory. That is correct, save the waiver argument that Lewis will be arguing. But that is correct. Why don't we leave the entire matter, including whatever your client may want to assert as an ultimate beneficiary here, before the arbitrator? And if a dispute arises later between your client and another ultimate beneficiary who were parties to the settlement agreement, that can go to court. That is essentially the relief I'm seeking, Your Honor. Well, excuse me, you assert that relief, but you do not want CF to be a party to the arbitration. That is correct, Your Honor. But CSF has an interest in the subject of the arbitration. It does not, Your Honor. It has an interest in the amount of, let me start again. It has an interest in the administration of the Q-tip Trust because if that administration is, in fact, upheld, your client will get less. If that administration is found to have been a breach of trust, potentially your client will get more. So to that extent, your client, even at this stage, has an interest in the trust administration, which is the main issue. The CF Foundation's interests arise only out of the settlement agreement. And they are not ripe until the proceeding that comes before it is resolved. The parties knew this. This is a very sophisticated settlement agreement. CF Foundation was not even formed until the settlement agreement was complete. It was formed to receive a grant from the fund. So I agree with your initial remarks. The CS Foundation should just wait. And my relief that I am seeking is that the matter be remanded to federal court and stayed. Then either the arbitration or the underlying claim will go forward in district court, depending on what you do with the waiver argument. And once that issue is resolved, the CS Foundation may or may not have a claim because currently their claim is essentially not ripe. And if I may, I have very short time. I'd like to just get to one point about timing. You say it's not ripe. On behalf of your client, you are making arguments about the misadministration of the Morris Trust. Is that correct? That is correct, absolutely. That is the essence of my claim. And as Justice Souter has pointed out, to the extent you can substantiate those claims, then there's a chance that more money will ultimately be coming into your foundation, right? That is correct. Okay, so the CS Foundation has a similar interest. They're arguing that they, too, will benefit from more money coming to the fund and down to the parties that are successors in interest to the fund. So why don't they have a similar interest in the misadministration of that trust? Are they asserting that there was that improper administration of the trust, or are they just sort of sitting passively there and saying, if you guys can prove it and more money comes in, then we share in it? They are not asserting that there's a misadministration. And if they did, it would be problematic because the parties that I am going after, regarding the misadministration of the fund, are the trustees of the Cohen-Solomon Foundation. So, again, this is complex. But all of their claims arise only out of the settlement agreement. They have no privity back to the Maurice Trust. And if I may, the settlement agreement resolved a dispute among trustees of the Fund for Philanthropy and Education. That is a 1982 trust. There's no arbitration provision in those trust documents. The Maurice Trust was created seven years later, and therefore has nothing to do with that settlement agreement other than it is a potential donor in the future if I am successful in my claims. So the arbitration, there's no nexus to the arbitration provision. May I finish one other thought? Yes. The claim in the counterclaim is clear. The pleadings put before this court, the briefs in this court, are clear. In the counterclaim, the counterclaimants seek a declaratory judgment concerning the rights of the CS Foundation under the settlement agreement to receive one half of any benefits, et cetera, et cetera. The entire dispute of the counterclaim is under the settlement agreement. The parties were absolutely and fundamentally clear about where such a dispute should be heard. And they put a clause in it that said you can't look to other agreements. There's a merger clause that says you can't look to other agreements. The other side would have you disregard these provisions and simply say it all generally relates back to the Maurice Trust. I urge you to look closely. It doesn't. It all arises out of the settlement agreement and, therefore, should be heard in court and, in fact, should be stayed pending a resolution of the underlying claims. Thank you, Your Honor. Good morning, Your Honors. Sean Carnathan for the appellee and cross-appellant Lewis Cohen. It's my position here today, Your Honors, that the main event, if you will, the claims by FBE, the cross-claims by Lewis, should not be compelled into arbitration and that, to the contrary, the appellees have waived any right to compel arbitration through years of participation in the state court litigation. They have, in fact, invoked the machinery of litigation by filing their action in the Suffolk Probate Court. They have taken actions inconsistent with any right to arbitrate by arguing to the Norfolk Superior Court that my client's more fulsome complaint should be dismissed on 12B9 grounds in order to resolve the entire dispute in the Suffolk Probate Court. And the litigation in the Suffolk Probate Court continues. And what would make it so unfair, Your Honors, to allow this order to stand compelling Lewis Cohen and FBE into an arbitration proceeding is that will, if you will, allow the appellees to have fragmented this case in a way that is procedurally beneficial to them. They have chosen their forum. They are presenting their piece of this dispute, and it is a unified dispute, which I'll get to in a moment. They are presenting their piece of this dispute in a court proceeding with court-sponsored discovery where they will have a court-sponsored trial. And if they are successful in forcing our piece of the dispute, if you will, into an arbitration, we will be consigned to what we perceive as an expensive and burdensome proceeding that lacks any predefined discovery rights, that does not have a jury trial, that does not have what we perceive as the benefits of being in a court proceeding. And given the maneuvers that the appellees have engaged in in the state courts. So tell us why the dispute is the same. Their action involved the Maryland Trust and another trust, but not the QTIC Trust. That's the way I understood it. Thank you, Your Honor. It actually is a matter of looking at what I would call the common nucleus of operative facts. We are talking about a unified dispute that traces back really probably to 2008, 2009, but certainly no later than the fall of 2010. And it's a dispute that arose really between Louis and Betsy, his sister. And Betsy is married to Appellee Martin Solomon, advised, we say erroneously, by Mr. Casey. And Betsy and Martin were involved in really a two-step scheme, if you will, where step one was to push the assets out of the QTIC Trust. And the QTIC Trust was formed to provide a life estate to Marilyn, the mother of Louis and Betsy. And then the residual interest was supposed to go to FPE. So step one was to push all of the assets into Marilyn's individual name. Step two was then to amend Marilyn's personal estate plan, her revocable trust, largely in the last weeks of her life, so that more of the estate would go to Betsy than to Louis. This is a unified dispute. And it blew up in the fall of 2010. And it's true that in years gone by, Louis had acquiesced in some of the QTIC distributions at Mr. Casey's advice. But by the fall of 2010, with Marilyn in her final weeks of life, Louis was balking at further transactions, and one in particular, I think the Wells Fargo transaction he refused to comply with, which led to what we say is the undue influence of Marilyn. This is all one big ball of factual nucleus of dispute, Your Honor. And so what happened was, after Marilyn died, the appellees chose the Suffolk Probate Court and chose to go into the Suffolk Probate Court and claim that what they were talking about was the amendments to the Marilyn dispute. And they knew that Louis challenged them on undue influence grounds. And so they said right in their complaint in Suffolk Probate, we are here to get a ratification of these amendments. And in Louis' response, he raised the QTIP issues. And if I may, I could just very briefly read to Your Honors from Exhibit B to Document 32 of the trial court record, which is Louis' original Norfolk County Superior Court complaint, which everyone agrees paralleled what he said in the Suffolk Probate Court complaint. As far as I can tell, the Suffolk Probate Court counterclaim is not in the record. But there is documentation in the record that shows that this document parallels what he said there, which led to the arguments of, oh, gee, we should do this on the Suffolk Probate Court because it's all the same dispute. We can do it all there. And so if Your Honors were to look at, in particular, paragraphs 26, 27, and 29 of Louis' complaint in the Norfolk County Superior Court action, you'll see that right in there he alleges in paragraph 26 that during Marilyn's final illness, during this period in which she became gravely ill in 2010, Martin and or Betsy and or Casey and or others continued to exert undue influence upon Marilyn to amend the MAC trust. Then in 27 he says, Meanwhile, in October and November 2010, Casey advised Louis and Martin as trustees to enter into certain transactions that Martin supported, ostensibly for Marilyn's health, education, and support. As Marilyn's condition worsened, Casey, Martin, and Betsy and others implored and pressured Louis to enter into these transactions. On information and belief, Casey and or Martin and or Betsy and or others similarly pressured, if not directed, Marilyn to execute the amendment that he prepared to the MAC trust. The transactions he's talking about there, as everyone involved in this lawsuit knew, are the Q-tip transactions. He's making a direct connection. So they could have insisted on a right to arbitration, may or may not have been successful. Instead, they filed a motion to dismiss on the basis of the suffolk probate. Correct, Your Honor. So I don't understand how that makes it all one. That they prevailed on one basis and never got to the second that they're now raising. Well, the core of what we're saying, Your Honor, is that they have invoked litigation machinery in a way that is highly favorable to them and highly prejudicial to us. They've selected the suffolk probate court as their venue to present their truncated, fragmented half of this case. And then they've gone in Norfolk, and if you look at actually Exhibit E to Document No. 32, you'll see the more fulsome complaint that Louis filed, his amended complaint, which explains all this in great detail. Did anything in the suffolk probate case complaint talk about the handling of the Q-Tip Trust? Not in their complaint. Yeah, that's my question. The sorts of allegations that I've just read to you in Louis' response raise the issue, that joins the issue. And so what we're saying is that they have done that tactically to put their spin of what happened in front of the court while pushing us into arbitration, and that's not fair, Your Honor. Thank you. Thank you. May it please the Court, Robert Frank for Defendant Appellee Robert Casey. As Justice Souter said, there are two questions in this case. The first question is, is there a requirement of arbitration with respect to the claim alleged in the complaint in this case? The second question is whether the CS Foundation is entitled to participate in that arbitration. I'm going to address the first of those questions. Ms. Sattler is going to address the second question. It's undisputed that the claim in this case falls within the scope of the arbitration provision that's relevant to this case. The claim in this case is that the trustees of a Q-Tip Trust transferred assets out of the Q-Tip Trust in a way that exceeded their powers as trustees of that trust. Under the terms of that trust, and I quote, any controversy or claim arising out of or relating to this trust agreement or the breach thereof shall be settled by arbitration. That's the Maurice Trust Agreement. The argument that is then made is that in other litigation, not this case, a waiver was made by conduct. And in order to evaluate the context within which such a claim is evaluated is set forth in the Creative Solutions case, which is that any doubt regarding arbitrability should be resolved in favor of arbitrability. There's no claim that there was any waiver in this case. Complaint filed, motion to dismiss filed, motion to dismiss granted, no delay, no counterclaim, no discovery, no argument directed to the merits. The argument that you just heard is that because there was another case involving the Maryland Trust, a separate trust that was brought in Suffolk probate court, that that constituted a waiver. The issue in the Suffolk probate case, just as Mr. Carnathan read to you, is whether there was undue influence exercised over Maryland, not Maurice, Maryland prior to her death, and whether as a result there should be a rearrangement of matters within the Maryland Trust Agreement. A different dispute arising under a different trust agreement, which trust agreement does not contain an arbitration provision. Therefore, as a matter of law, there couldn't have been waiver because it's a different issue, a different trust. There's a second trust involved in that case, and the property there is a condominium held by that trust. Yet a different dispute. But Mr. Carnathan says really, if you take a realistic view of what's going on here, ultimately you're all fighting about the same assets. They're all so interrelated that you can't, however you may want to characterize the different pieces of litigation, at bottom the focus is on the same body of assets. The fair answer to that question is that certain of the assets that were transferred out of the Maurice Trust to Maryland during her lifetime continued to be owned by Maryland, and therefore are held today in the Maryland Trust post her death. But the question is whether by conduct there has been a waiver of arbitration. And you can't waive arbitration by arguing about undue influence over Maryland, a dispute that arises under the Maryland Trust that does not have an arbitration provision. So focusing on the right question, which is has there been a waiver by conduct, the answer is no, there hasn't. There's yet another case between these parties. That one was brought in Norfolk Superior Court. In that case, as originally pled, it was the flip side of what was going on in Suffolk probate. That is Lewis, Mr. Carnathan's client, alleged literally the opposite of what had been alleged. He did allege that there was undue influence. That's what he read to you just now. And we filed a 12B9 motion, doesn't exist under federal rules, but basically if there's a prior pending case in the Commonwealth, that's a ground on which the case can be dismissed. Again, no litigation going to the merits. Immediate motion to dismiss, motion granted because the issues were the same. After the motion was filed and after the motion was argued, FPE Foundation intervened, I'm sorry, counterclaimed and asserted the claims that are asserted in this case. Nothing was ever filed directed to that claim. Case was dismissed. Before the case actually went to judgment, FPE actually withdrew its claim. Let me just offer a couple of practical considerations here. We're in the third piece of litigation between these two parties. There has been no appeal on the question of whether or not there should be arbitration as it relates to FPE. So if we go to arbitration with FPE and then we have a subsequent case involving CS Foundation, that's yet another case and yet another. So FPE has to arbitrate. Lewis would like a separate trial of his claims and then they would like a separate trial of the FPE claims. This is not an issue of law, but as a practical matter, in terms of getting this family's problem solved, going forward with an arbitration is now the shortest path. You say it's sort of a practical consideration, but the way, I guess the, let me ask the question this way. From the perspective of your clients, do you care whether CS Foundation is involved in the arbitration? The dispute, as it's been presented to us, does seem to be, with respect to CS Foundation, it's a dispute with the FPE Foundation as to how the settlement agreement of 2010 affects them. Do you care whether they're involved in the arbitration? The answer, candidly, the answer is no. I do not have an interest in that. I'm simply pointing out to, trying to point the court in the direction of how we resolve this collection of disputes in some rational way. I don't have a dog in that fight. You're absolutely right. Let me just make another point or two, if I may. Before you do that, can I ask you about someone who you might care about, Mr. Casey? Yes. He's not, he was not the settler. He's not a beneficiary of the Maurice Trust. He's not in neither of those positions with respect to Q-Tip. Presumably, and correct me if I'm wrong, I don't know what the doctrine is, he couldn't be forced into arbitration. How is it that he can force someone else into arbitration? It is alleged that Mr. Casey, it is alleged, denied, but alleged that Mr. Casey served as counsel to the Trust and therefore owed a fiduciary duty to the Trust. And on that basis, we asserted that he, that this issue is arbitrable as to him. That issue, Your Honor's question, was raised in the district court and that argument was made. It was rejected by the district court and no appeal has been taken. Therefore, it's dead and just not available. I want to point to one other thing. In the course of the Norfolk case, and at a time when it involved the issues that involve the undue influence issue, we said we would waive all jurisdictional disputes if the whole thing, the whole set of family disputes could be put into the probate court. They're probate court type disputes. They should be heard by the probate court. And if you will agree to that, we said, we'll waive all of our jurisdictional disputes. That is now cited back as a general waiver of arbitration. In fact, the offer that we made to have everything resolved in Suffolk probate was rejected. This action was brought and now the shortest path to the resolution of this dispute is through arbitration. And that ultimately is what the settlor of this trust directed. And that is what the people who claim under this trust have to live with. It is that the shortest path to resolution of a family dispute is in private and by arbitration. Thank you. Good morning, Your Honors. Rosanna Sattler for the C.S. Family Foundation and for Martin Solomon as he is trustee of the Q-Tip Trust. I wanted to just start out by pointing out Record Appendix pages 238 and 239 because in there it states what we were looking for in our declaratory judgment. And it was not just pursuant to the settlement agreement. What we asked for was for a declaration of all of the party's rights under the Maurice Trust, under the Q-Tip Trust. The Fund for Philanthropy, which was established in 82 by Maurice, is a remainderman of the Q-Tip Trust. We as the Cone-Solomon Foundation have alleged that we stand in the shoes of the remainderman. That is also what FPE alleges. FPE alleges they are the sole remainderman. If the case goes to arbitration and they are found to be the sole remainderman, then under the First Circuit case of the Merrill Lynch-Fenner-Smith, 807 F. 2nd. 16, it is possible that there could be a collateral estoppel against the C.S. Family Foundation if we are the only party that is asked to sit out from all the litigation of the arbitration and then come in later. Because one of our contentions is that the C.S. Family Foundation, excuse me, is that the F.P.E. It's a corporation. It's a Delaware nonprofit corporation that was established when it looked like they were going to lose the Norfolk case. It was established in January of 2012. Shortly thereafter, the case was dismissed by F.P.E. in Norfolk and brought in this court. It was a rigged up type of a thing to create F.P.E. so they could come in here with diversity jurisdiction and file the case. So basically in one sentence you're saying we have a place in the arbitration because we claim to be a remainderman. Yes. Period. Yes. Judge O'Toole found that we were entitled to arbitrate. This case, we can't forget, deals with the alleged mismanagement of the trust created by Maurice. Maurice also created the Fund for Philanthropy. He did not create F.P.E. in 2012 because he had been dead for a long time. They allege, F.P.E., that it's entitled to the transfer that should have been made to the Fund for Philanthropy because there is successor in interest. We allege the same thing. May I ask you this question? Let's assume you are properly a party to the arbitration. At the end of the arbitration, when there is a declaration of what, if anything, is still due to the remainderman, would it be within the discretion of the arbitrator to say on the controversy as between your client and F.P.E., that may be left to subsequent and independent litigation? We will simply set aside this fund for the remainderman, and you can fight out later as between the two of you in a court of law how much, if anything, one or either remainderman gets out of the fund. Would that be open? I don't think so, Your Honor, because one of the things we're saying is that F.P.E., they allege that they are a successor in interest. We have maintained throughout this litigation that they are not a successor in interest. I mean, for purposes of this appeal, we have to agree that they are. But one of the things we will be arguing in the arbitration is that they are not a true successor in interest and that they aren't entitled to anything. They are also alleging that we're not entitled to anything. So you're saying it could not decide the question, which on your view is clearly arbitrable, without making the determination as between you and, I get the initials mixed up, F.P.E.? F.P.E. and the C.S. Family Foundation stand in the same place. We should be in the arbitration together. The arbitrator should decide who's entitled to what, whether anybody did anything wrong, and then how the assets get sent out. And if it says something is owed to the Remaindment, it's got to identify who the Remaindment is. Yes, exactly. That's it, okay. Yes, that's my argument. We think that this is intertwined. Obviously, what you've heard this morning is the entire controversy is intertwined. We think that this will give finality to the litigation, that all of the parties' rights will be dealt with in one proceeding, and that that proceeding should be arbitration. This is what Maurice wanted. It was a... May I just finish my sentence? Thank you. He had a family trust. He had a family foundation. He wanted his son and daughter, Betsy and Louis, to get everything 50-50, and he wanted charitable contributions to be made to charities. This was his grand plan, and we think this Court should honor his plan and have the arbitration and let these assets flow to where they're supposed to flow. Mr. Whelan, anything else? Very briefly, Your Honors. I asked the Court to look at the question as to how the CS Foundation thinks it's a remainderment. It's only through the settlement agreement. It didn't exist when the trust was formed. I asked the Court to read the settlement, and I think it will be clear to you that everything in that was about the fund, and the Maurice portion of it is only as a donor to the fund. Now, if I may, it was represented that FP does not think that the waiver issue still exists. We didn't appeal that issue because we were late going into state court, but we absolutely think that waiver occurred. And from a practical standpoint, the right outcome is that everything is remanded to the federal court to all be heard in one place. When we got involved with this case, it was a procedural circus. We thought the simplest thing to do was put it in one place, federal district court. And, in fact, Robert Casey and Betsy also thought it should be in court. They just didn't want a jury. And this email from Attorney Sattler to me dated October 16, 2012, is in the record. It's found at pages 106 to 212, I believe, and it's Exhibit B to our SIR reply to the motion to dismiss in the district court. She wrote, For the record, as indicated to Norfolk and Suffolk judges, happy to have all claims filed in Suffolk, including yours, meaning FP's, and tried to the master of fact final. Happy to have all claims, including probate court claims, in federal court rather than arbitration with a bench trial tried to Judge O'Toole. This is a procedural game. The goal is to make it scatter shot all over the place. It should be heard in one place. They have waived their right to arbitration. We ask that the entire matter be remanded. If the court is not willing to do that, we ask that the counterclaim, which has nothing to do with them being a remander because they're not, be heard in court and stayed pending the resolution of the arbitration. Thank you, Your Honor. All rise, please. Whatever you say, Your Honor. The court will take a brief recess.